Tyrone M. HAMEL, Appellant,

v.

The STATE of Texas, State.

No. 2–89–193–CR.

Court of Appeals of Texas, Fort Worth.

Feb. 13, 1991.

Terry M. Casey, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., and J. Rex Barnett, Asst. Dist. Atty., Fort Worth, for appellee.

Before WEAVER, C.J., and JOE SPURLOCK, II and DAY, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

Tyrone M. Hamel, appellant, was charged with aggravated sexual assault with a deadly weapon. TEX.PENAL CODE ANN. sec. 22.021 (Vernon 1989). He plead "not guilty" and was convicted after a jury trial. The appellant elected to be sentenced by the court which found an enhancement paragraph true and sentenced the appellant to life in the state penitentiary. TEX.PENAL CODE ANN. sec. 12.42(c) (Vernon Supp.1991). Appellant perfected appeal to this court and now brings two points of error.

■ In his first point on appeal, the appellant contends that the trial court erred and violated appellant's constitutional rights by overruling his objection to the empaneling of a jury from which he claims that blacks were intentionally excluded by the utilization of the State's peremptory strikes. In his second point he argues that the prosecutor made an improper jury argument which had the effect of shifting the burden of proof. We disagree with both points on appeal and affirm the judgment of the trial court.

The facts are undisputed. On January 29, 1988, three young women, employees of the Dance Shop, a Fort Worth retail store were working near closing time. A man came in and asked for directions. After getting directions he left but returned moments later holding a handgun and announcing "this is a robbery." The three women recognized the intruder, a black male, as the man who had been in moments earlier. They subsequently identified him at a police lineup and again in court as the appellant.

According to the three women, the appellant forced all three to lie prone on the floor, all the while threatening to blow their heads off if any failed to comply with his orders. After compelling one of them to empty the cash register and the womens' purses and give him the money, the appellant sexually assaulted two of the women. While threatening them with his gun he forced both women to perform various sex acts with one another and with himself. Throughout the assault both women feared imminent death at the hands of the appellant. Following the sexual assault the appellant compelled the third woman to give him her car keys and fled in her car.

During jury voir dire, the State exercised only six of its ten peremptory strikes. According to appellant, since one black juror was excused for cause and another by agreement, this non-use by the State of its full complement of strikes had the effect of eliminating from consideration the only remaining blacks on the panel, numbers thirty-two and thirty-three on the venire list.[1] In his first point of error, appellant claims that the State violated his constitutional rights in excluding members of his race from the jury. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Appellant claims that the State's actions during voir dire creates an inference of a discriminatory purpose. *See Id.,* at 96–97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. According to appellant that purpose is revealed in the fact that the prosecutor asked each white prospective juror who had friends or relatives charged with a crime whether they had been satisfied with the way the matter was handled. The prosecutor did not ask the same question of black members of the venire panel who had friends or relatives similarly charged. The prosecutor, at a hearing on appellant's *Batson* objection, explained that he found no problems with the jurors who were selected and felt no need to exercise his strikes. The court found that the State had racially neutral reasons for exercising its strikes in the manner in which it did and also that the State did not strike any identifiable racial

1. Appellant had already requested and been granted a reshuffling of the jury list.

groups in its nonuse of strikes. Appellant does not contend that the State struck any minority jurors for improper reasons.

We agree with the State that appellant's argument is an unwarranted extension of *Batson*.[2] Under *Batson* and under TEX. CODE CRIM.PROC.ANN. art. 35.261 (Vernon 1989), an accused has the right to request a new jury panel if the State *removes* jurors because of race. Here, there was no credible prima facie showing that the State had *excluded* jurors for racial reasons.

We hold the State has no duty to use all of the State's strikes merely because there are minority members of the panel farther down the jury list. *See Batson*, 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87 (prima facie case under *Batson* includes showing that the prosecutor exercised strikes to *remove* venire members of the defendant's race). To hold otherwise would be to require the State to explain its reasons for failing to strike jurors which neither the State nor the accused felt should be removed for cause. The effect would be to require the State to justify not only its striking of jurors, but also its acceptance of jurors it found unobjectionable. Were that our decision, we would call into question the practice of peremptory strikes and perhaps of participation by counsel in the jury selection process.

In any event, in this case, the appellant's logic is faulty. He believes that since each side had ten strikes, a total of twenty, had the State used all ten of its strikes, which we have held that it had no duty to do, the veniremen numbered from thirty-two on would necessarily have been considered. This belief assumes that the appellant himself would have used all of his own strikes and none of those strikes happened to duplicate the State's strikes, a contingent fact which may be true in this case. It is not difficult to imagine the appellant failing to find ten nonminority veniremen in the first twenty against whom he wished to use his strikes. It follows that the accused like-wise has some control over whether minority members of the panel are reached.

Appellant's first point on appeal is overruled.

■ In his second point on appeal, appellant claims that the State impermissibly shifted the burden of proof in its jury argument.

During the State's presentation of its case, it called the expert who performed tests on seminal fluid collected from one of the rape victims and compared it to fluid from appellant. The tests showed that appellant possessed certain blood enzymes in common with the person who committed the offense and which at most 8.6% of the black population possesses. On cross-examination the appellant questioned the expert about "DNA fingerprinting" and the likelihood that the process would have more precisely identified the rapist. The State did not perform such a test. During his jury argument, the appellant suggested that the fact that the State did not offer such DNA evidence indicated its fear of the results or a desire to keep vital information from the jury. The State, on rebuttal, answered that, as testimony had shown, the DNA tests are performed by private labs and that the appellant could have had the tests made. The State concluded by saying that the fact that the appellant did not get such tests shows that *he* feared the results. At this point, the appellant objected and was overruled.

The objected to statements were clearly a legitimate response to the allegations made by the appellant on his closing. *See Harris v. State*, 784 S.W.2d 5, 12 (Tex. Crim.App.1989) (proper jury argument falls into four categories: summation of evidence, reasonable deductions from the evidence, *answer to argument of opposing counsel*, pleas for law enforcement). The statements did not shift the burden. Indeed, since the evidence adduced at trial included identification of appellant by the victims and scientific evidence which

---

**2.** We need not address the State's contention that the appellant did not timely object to the empaneling of the jury, since we hold that there was no infringement of appellant's rights or other error committed.

strongly implicated the appellant, the State more than met its burden. The appellant's second point on appeal is overruled.

Having overruled both points on appeal, we affirm the conviction and judgment of the court below.