David Todd MAYES, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–93–026 CR.

Court of Appeals of Texas,
Beaumont.

Feb. 16, 1994.

David M. Flynn, Beaumont, for appellant.

Tom Maness, Dist. Atty., Rodney D. Conerly, Asst. Dist. Atty., Beaumont, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Possession of a Controlled Substance (Cocaine). Following their verdict of "guilty," appellant pleaded "true" to enhancement paragraphs contained in the indictment and the jury assessed punishment at twenty (20) years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant raises seven points of error on appeal. We will combine discussion of the various points of error when appropriate.

Points of error one and two are presented as follows:

Point of Error One: There was insufficient evidence before the jury to sustain a conviction.

Point of Error Two: That the court erred by failing to grant the motion by defense for instructed verdict.

We note at the outset that a challenge to the trial court's ruling on a motion for an instructed verdict is actually a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App.1990), *cert. denied,* 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). When reviewing sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the verdict in determining whether any rational trier of fact could have found each essential element proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct.

2781, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991). We consider *all* evidence whether rightly or wrongly admitted. *Nickerson v. State,* 810 S.W.2d 398, 400 (Tex.Crim.App.1991).

In the instant case, the State produced a single witness as to the events surrounding appellant's arrest for the alleged offense. The record reflects that on February 28, 1992, at approximately 1:30 a.m., Officer Rudy Salerandi of the Beaumont Police Department was on routine patrol by himself in a marked patrol unit. At that point in time, Officer Salerandi observed a 1986 red Mercedes Benz automobile run through a red light at the intersection of Washington Boulevard and Fourth Street. The officer engaged his emergency lights and the vehicle pulled over. Appellant was driving the vehicle and the only other occupant, Howard Griffin, was sitting in the front passenger seat. As the officer approached the vehicle on the driver's side, he shined his flashlight in the vehicle's back seat area. The officer testified that this was routine procedure for officer safety so as to make sure that no one was hiding or laying down on the back seat.

Officer Salerandi testified that as he directed the flashlight into the rear of the vehicle, he observed a clear plastic baggie which contained several white rock-like substances, which through his training and experience appeared to be cocaine. Salerandi stated that the baggie was located on the floorboard behind the driver's seat. At that point, Salerandi placed both appellant and Griffin under arrest. A subsequent search of the vehicle for further contraband turned up a matchbox located next to the baggie of cocaine. The matchbox also contained several more cocaine rocks. The total number of individual cocaine rocks in both the baggie and the matchbox was sixty-five. A further search of the vehicle turned up $283 in currency in the glove box.

Officer Salerandi testified that he searched both appellant and Griffin incident to their arrest. On Griffin, the officer discovered $123 in currency and a digital pager. On the person of appellant, the officer discovered U.S. currency totalling $1,267. No items of paraphernalia were found in the vehicle or on

the persons of the suspects, nor was there any indication that the crack cocaine had been smoked or ingested in any manner by the suspects within the vehicle. Further testimony revealed that although appellant was driving, the vehicle was owned by Griffin. Salerandi further stated during questioning by the State that upon being booked-in at the county jail, appellant had been asked his employment status among other routine general information questions. Appellant responded that he was unemployed.

■ It is clear from the testimony contained in the record before us that the evidence of possession of the contraband by appellant was entirely circumstantial. Nevertheless, we use the same standard to review circumstantial evidence and direct evidence. *Geesa,* 820 S.W.2d at 160–161. Furthermore, to establish unlawful possession of a controlled substance, the State must prove that the accused exercised care, custody, control, or management over the contraband. *Cude v. State,* 716 S.W.2d 46, 47 (Tex.Crim. App.1986). Such control over the contraband need not be exclusive, but can be jointly exercised by more than one person. *Id.* However, when the accused is not in exclusive control of the place where the contraband is found, the State must show additional affirmative links between the accused and the contraband. *Id.* Said affirmative links can be established by showing additional facts and circumstances which raise a reasonable inference of the accused's knowledge and control of the contraband. *Pollan v. State,* 612 S.W.2d 594, 596 (Tex.Crim.App. 1981); *Cooper v. State,* 852 S.W.2d 678, 681 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd); *Vallier v. State,* 689 S.W.2d 488, 489 (Tex.App.—Beaumont 1985, no pet.).

■ The affirmative links which raise the reasonable inference of appellant's knowledge and control of the contraband are 1) the contraband was located directly behind the seat in which appellant was sitting, 2) appellant had an unusually large sum of money upon his person considering he was unemployed, and 3) the large amount of money on appellant's person coupled with the large number of cocaine rocks present is consistent with knowledge and control of said cocaine

rocks at least for purposes of personal possession if not also for purposes of sale and distribution. We find the affirmative links sufficient to raise the reasonable inference that appellant had knowledge and control of the contraband. As such, any rational trier of fact could have found that appellant unlawfully possessed the cocaine rocks in question beyond a reasonable doubt. Points of error one and two are overruled.

Appellant's third point of error complains, "The court allowed admission of the statement by defendant that he was unemployed." Appellant argues that as appellant's statement that he was unemployed was an oral unrecorded statement, it was admitted in violation of TEX.CODE CRIM.PROC.ANN. art. 38.22 (Vernon 1979 & Vernon Supp. 1994). The gist of the State's response is that article 38.22 is not applicable under the circumstances surrounding the acquisition of the fact of appellant's employment status. We agree. Article 38.22 prohibits the admission of oral statements "made as a result of custodial interrogation." However, questioning "normally attendant to arrest and custody" is not interrogation. *McCambridge v. State*, 712 S.W.2d 499, 505 (Tex.Crim.App. 1986) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 308 (1980)). As pointed out above, the record in the instant case reflects that appellant's employment status was elicited during routine book-in procedures at the county jail subsequent to his arrest. Such questioning does not constitute custodial interrogation for purposes of article 38.22. As such, the trial court did not err in admitting testimony concerning the fact that appellant was unemployed at the time of his arrest. Point of error three is overruled.

In a related complaint, point of error four states, "The court failed to make a finding of fact as required by article 38.22 sec. 6 in that the statement entered against the defendant about his employment was voluntarily made and in accordance with requirements of article 38.22." As we have already stated *infra* that article 38.22 was not applicable to the circumstances surrounding the discovery of appellant's employment status, the trial court was under no requirement to follow up with written findings of fact and conclusions of law as required under article 38.22, § 6. Point of error four is overruled.

Appellant's fifth point of error avers, "The court committed reversible error by overruling the defense *Batson* motion." The record before us reflects that of the first thirty-two members of the venire, only four were African–Americans. Those four were numbers 7, 25, 31, and 32. The record further reflects that the State used peremptory strikes on only three venirepersons and of those three, only one was an African–American. As appellant is African–American, he objected under the dictates of *Batson v. Kentucky* [1] and requested a *Batson* hearing. The trial court permitted the State to articulate race-neutral reasons for its strike of venireperson No. 7, the lone African–American venireperson struck by the State. The State responded as follows:

(The State): Venireman No. 7, Whitney J. Green, and Venireman No. 18, Timothy A. Page, both responded that they, themselves, had been arrested and placed on probation for the offense of D.W.I. They were both struck for that reason.

Appellant's cross-examination of the attorney for the State is reflected in its entirety as follows:

(Counsel for appellant): Mr. Rodriguez, is it your testimony that these are the only two people that stated in the affirmative that they had been convicted of driving while intoxicated?

(The State): No, other people answered in that same fashion. However, they were far enough down the list that the use of a strike would have been a negative gesture. I believe Venireman No. 36 answered in that fashion, as well as also perhaps Venireman No. 35.

However, in calculating the number of strikes allowed to the defense and the number of strikes allowed to The State, I determined that that would be a futile

1. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

strike even if made because they were so far down the list I wouldn't get there.

(The Court): I didn't make notes of that. Were there any other in the first 32 that had been—

(The State): (Interrupting) No, Your Honor, not in the first 32. Others responded regarding friends or family members, but those were the only two veniremen that responded as to them having been personally arrested for the offense of driving while intoxicated.

No further questions were asked by appellant.

As we appreciate appellant's complaint, it is not that the State's reason for striking venireperson 7 was not race-neutral or was pretextual, but that the State deliberately refrained from using its remaining seven peremptory strikes against white venirepersons so that the remaining African–American venirepersons (numbers 25, 31, and 32) were precluded from being reached for inclusion on the twelve-member panel. In other words, appellant argues that because of the State's *inaction*, qualified African–American venirepersons were strategically prevented from serving on the ultimate jury panel. Judicial history is proof that those contentions which we deem ludicrous or absurd today, may tomorrow become reality. Appellant provides no case authority for such a novel proposition, nor were we able to discover any. We are certainly not prepared to hold that an appellant may sustain a *Batson* challenge by proof of the State's *non-use* of peremptory challenges. Therefore the trial court did not err in overruling appellant's *Batson* challenge.[2] Point of error five is overruled.

█ Point of error six complains, "The prosecutor erred in giving the jury an erroneous standard of reasonable doubt to use in their decision." The record reflects that appellant framed his objection to the referenced portion of the State's argument as follows:

(Counsel for Appellant): Your Honor, I object to the use of the term "involved" with drugs. The charge is possession of a controlled substance, namely, cocaine. It is an improper argument, Your Honor, not based on testimony or natural inference or an appeal for general law enforcement, Your Honor.

It is clear that appellant's objection at trial differs from his complaint on appeal. Therefore, appellant has preserved nothing for review. *Sterling v. State,* 800 S.W.2d 513, 521 (Tex.Crim.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991). Point of error six is overruled.

Appellant's final point of error states, "The prosecutor erred in changing the theory of the case from possession of cocaine to distribution of cocaine and alleging a partnership between the passenger and the defendant." Under the specified point of error, appellant argues as follows:

The whole case and theory as presented by the state (sic) was to prove that there was a working relationship between the passenger and the defendant and that they were in common business to deal the drugs in the back of the car.

This court in reviewing the evidence and the argument of the prosecutor do not know that the jury was persuaded to convict upon a nefarious drug dealing operation or some vague idea that the State had proven the case of possession.

█ As is evident by the above quote, as well as the remainder of the argument under this point of error in appellant's brief, appellant has failed to cite any place in the record where this argument was made and ruled on by the trial court. The Court of Criminal Appeals has been very clear on this issue, *viz:*

Because the right to appellate review in this state extends only to complaints made in accordance with our published rules of appellate procedure—which require an appellant to specify the pages in the record where the alleged error can be found—we

---

**2.** Appellant makes no mention or argument in support of this point of error based upon the holdings in the landmark cases of *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), or *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

hold that with respect to [various State's exhibits], appellant's complaint is inadequately briefed and not preserved for our review. Tex.R.App.Proc. 74 and 210; *Harris v. State*, 827 S.W.2d 949, 958 (Tex. Cr.App.1992).

*Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim.App.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).

Appellant's failure to specify pages in the record where his complaint occurred, was made known to the trial court, and ruled upon, preserves nothing for our review. Point of error seven is overruled; the judgment and the sentence of the trial court are affirmed.

AFFIRMED.

BURGESS, Justice, concurring.

I concur in the result. I write to take issue with the majority's handling of the final point of error. While it is true the complained of argument is summarized without reference to the record, the argument was previously noted verbatim and by reference to the record in two places within the factual discussion of the case and in points of error 1A, 1B and 1C. Consequently, I would address the point of error directly.

In that connection, there was no objection to any of the items mentioned by the prosecutor in his final summation on possession, e.g., the $123 found in the glove compartment, the digital pager found on the passenger and the $1,267 found on appellant. Therefore, the prosecutor was only arguing the evidence and reasonable deductions from that evidence and the point of error should be overruled on that basis. *Gaddis v. State*, 753 S.W.2d 396 (Tex.Crim.App.1988). However, this ruling should not be viewed as authoritative on the admissibility of the evidence since that issue was not before the court.