743 P.2d 406

The STATE of Arizona, Petitioner,

v.

Honorable William L. SCHOLL, Judge of the Superior Court, In and For the County of Pima, Respondent,

and

Gary Lorenzo BATES, Real Party in Interest.

No. 2 CA–SA 87–0039.

Court of Appeals of Arizona, Division 2, Department B.

June 5, 1987.

Review Denied Sept. 22, 1987.

---

Stephen D. Neely, Pima Co. Atty. by Louis M. Spivack and John R. Gustafson, Tucson, for petitioner.

Frederic J. Dardis, Pima County Public Defender by Carol Wittels, Tucson, for real party in interest.

1. No contention is made that her original position on the list was the result of anything other than chance.

2. That rule provides:
   **g. Exercise of Peremptory Challenges.** Following examination of the jurors, the parties shall exercise their peremptory challenges on the clerk's list by alternating strikes, beginning with the prosecutor, until the perempto-

OPINION

LACAGNINA, Judge.

This special action was taken from a mistrial declared by the respondent judge, following the refusal of the State to use one of its peremptory challenges to strike a white juror in order that the only black member of the venire could serve on the petit jury in the trial of the real party in interest, who is also black. The issue presented is one of statewide importance, involving the application of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in a case where the exclusion of members of the defendant's race from the petit jury results from the prosecutor's nonexercise of his peremptory challenges. We therefore accept jurisdiction.

· The facts in this case are not seriously disputed. The panel subject to voir dire consisted of 24 persons. Number 23 on the panel was its only black member.[1] Following voir dire, counsel for the real party in interest exercised all six peremptory challenges, *see* Rule 18.4(c), Rules of Criminal Procedure, 17 A.R.S.; however, the prosecutor exercised only four, leaving 14 on the panel. Pursuant to Rule 18.5(g)[2], the clerk was then required to strike the last two jurors from the bottom of the list. Since the black panel member was at that point in thirteenth position, the effect would have been to eliminate her from service on the petit jury.

Defense counsel moved to dismiss or strike the entire panel, contending that the state was in effect striking the only black venireperson by failing to exercise all of its peremptory challenges and therefore, under *Batson*, was required to give reasons. In response, the prosecutor explained that it was his practice not to exercise all of his peremptory challenges unless he had a rea-

ry challenges are exhausted. Failure of a party to exercise a challenge in turn shall operate as a waiver of his remaining challenges but shall not deprive the other party of his full number of challenges. If the parties fail to exercise the full number of challenges allowed them, the clerk shall strike the jurors on the bottom of the list until only the number to serve, plus alternates, remain.

son for doing so. He further stated that he would not have struck the black panel member and that he did not intentionally limit his peremptory challenges in order to produce the result of her exclusion by operation of Rule 18.5(g). The court accepted the prosecutor's avowal as to his practice with regard to peremptory challenges, concluding:

Now, I don't believe that Mr. Spivak [sic] has intentionally done that to strike this particular juror. I don't know what your normal practice is, but I assume your practice is not to strike—take the full six strikes, only to strikes [sic] those that you feel would be somehow—could not be a fair and impartial juror for the State. Or the State would rather not have those particular people on the jury. It is an interesting question.

After recessing to review the Supreme Court's opinion in *Batson*, the court then stated:

The way I see this is that by the State not using their full six peremptory strikes they are in effect striking the last—in this case the last two jurors. One of the last two being the only black who is serving on the panel.

Now, the Defense has objected to that in effect the State has struck the only black on the panel. Now, the way I read Batson is once that has been raised the burden now shifts to the State to convince the trial court, after giving neutral explanation, as to why the State made such a strike.

Now, I don't—I don't have a past history of Mr. Spivack's striking in other cases, but the explanation that this is the procedure he usually follows in his other cases I don't find to be a sufficient reason to strike the only black juror who is on the panel.

\* \* \* \* \* \*

As long as it is prevented before we start hearing any evidence, I think a reasonable solution would be to order another strike or to strike the number twelve juror and go next on the list, which doesn't make any difference to me, but—

\* \* \* \* \* \*

I am going to go back and I am going to order that the State make an additional strike. If the State says they don't want to make an additional strike then the Court is going to strike juror number twelve … and place [the black panel member] on the jury. Whichever way you want to proceed, Mr. Spivak [sic], is fine with me.

At the State's request, and with the concurrence of defense counsel, the court agreed to declare a mistrial in order to permit the state to seek appellate review of the issue.

In *Batson v. Kentucky, supra*, the United States Supreme Court altered the burden placed upon a defendant to prove a prima facie case of purposeful discrimination in the selection of the petit jury by eliminating the "crippling" requirement that the defendant show systematic exclusion in other cases based on race. 476 U.S. at ——, 106 S.Ct. at 1720, 90 L.Ed.2d at 85. The Court held that a prima facie case of purposeful discrimination may be based solely on evidence concerning the prosecutor's use of peremptory challenges in the defendant's trial, and set forth the burden of proof as follows:

To establish such a case, the defendant first must show that he is a member of a cognizable racial group … and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." … Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

476 U.S. at ——, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88 (citations omitted). Once the prima facie showing has been made, "the burden shifts to the State to come

forward with a neutral explanation for challenging black jurors." *Id.*

In the present case, the trial court found that the real party in interest had established a prima facie case of purposeful discrimination resulting from the State's failure to exercise all of its peremptory challenges combined with the operation of Rule 18.5(g). The State argues that the ruling in *Batson* applies only where the elimination of prospective jurors results from the affirmative exercise of peremptory challenges and is therefore inapplicable in this case. We do not believe that *Batson* should be read so narrowly. The critical inquiry is whether the State is engaging in purposeful discrimination in the selection of the petit jury. As the Supreme Court noted, peremptory challenges provide a means to discriminate to those who are so inclined. There is no reason to differentiate between use and nonuse of peremptory challenges in determining whether the State is engaging in purposeful discrimination in its selection of jurors. The situation presented by the instant case, that is, a limited use of peremptory challenges combined with the operation of Rule 18.5(g), on its face provides such an opportunity for purposeful discrimination. We find that the trial court was correct in determining not only that *Batson* applies, but also that the real party in interest had established a prima facie case of purposeful discrimination.

As the trial court correctly concluded, the burden was then upon the State to provide a "neutral explanation" for the resulting exclusion of the black venireperson from the jury. Addressing this point in *Batson*, the Supreme Court emphasized that this explanation "need not rise to the level justifying exercise of a challenge for cause," *id.*, but also stated that it was impermissible for the prosecutor to base his challenge of black veniremen "on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race." *Id.* Further, the Court stated that the prosecutor may not rebut the inference by merely denying any discriminatory motive or affirming his good faith in selecting individual jurors.

*Batson* was, of course, decided in the context of a case where the alleged discrimination resulted from the actual use of peremptory challenges. Its application is more difficult where the claim arises from the failure to exercise such challenges. In the present case, the prosecutor's explanation of his actions was two-fold. First, he stated that it was his practice in every case not to utilize all of his peremptory challenges unless he had a reason for doing so. Second, he stated that he had no reason to strike the black venireperson and had not utilized his challenges in order to achieve the contested result. Significantly, the trial court accepted this explanation as true, but nevertheless found that it was not "a sufficient reason to strike the only black juror who is on the panel." In so finding, and in determining that the black panel member must be placed on the petit jury, we believe that the trial court has misconceived the requirements of the *Batson* decision.

In reaffirming its prior holding that racial discrimination in jury selection violates the Equal Protection Clause and in easing the burden of proof placed upon defendants alleging such discrimination, the Supreme Court in no way modified or retreated from the principle that a defendant has no constitutional right to a jury composed in whole or in part of persons of his own race. *See Akins v. Texas,* 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945); *Strauder v. West Virginia,* 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1880). *See also City of Mobile, Alabama v. Bolden,* 446 U.S. 55, 77 n. 24, 100 S.Ct. 1490, 1505 n. 24, 64 L.Ed.2d 47, 65 n. 24 (1980) ("[T]he fact that there is a constitutional right to a system of jury selection that is not purposefully exclusionary does not entail a right to a jury of any particular racial composition.") Although the record is not entirely clear on this point, it appears that the trial court construed *Batson* to require that the black panel member be placed on the jury, even though it accepted the prosecutor's explanation of his actions as true and made no finding of purposeful discrimination by the State. To uphold the trial court's action would in essence mean that, in any criminal

proceeding where the defendant is a member of a cognizable racial group and the venire includes members of that group who are not subject to legitimate challenge by the State, those persons must be placed on the petit jury. Such a holding would be contrary to the underlying principle of the *Batson* decision that "[a] person's race simply 'is unrelated to his fitness as a juror.'" 476 U.S. at ——, 106 S.Ct. at 1718, 90 L.Ed.2d at 81, quoting *Thiel v. Southern Pacific Co.*, 328 U.S. 217, 227, 66 S.Ct. 984, 989, 90 L.Ed. 1181, 1188, (1946) (Frankfurter, J., dissenting).

As noted above, no contention is made that the black venireperson's position on the panel was the result of any purposeful discrimination. Accordingly, there is no finding of purposeful discrimination by the State and no basis for such a finding. Under these circumstances, the trial court erred in declaring a mistrial. The order is therefore vacated, and the cause is remanded for further proceedings consistent with this opinion.

HATHAWAY, C.J., and LIVERMORE, P.J., concur.