22 P.3d 35

**STATE of Arizona, Appellee,**

v.

**Joseph PALEO, Appellant.**

**No. CR–00–0284–PR.**

Supreme Court of Arizona,
En Banc.

April 26, 2001.

Janet Napolitano, Attorney General by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Joseph T. Maziarz, Assistant Attorney General, Phoenix, Attorneys for the State of Arizona.

James J. Haas, Maricopa County Public Defender by Spencer D. Heffel, Deputy Public Defender, Phoenix, Attorneys for Joseph Paleo.

## OPINION

MARTONE, Justice.

¶ 1 We granted review to decide whether the waiver of peremptory strikes during jury selection is sufficient alone to constitute a prima facie case of discrimination under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We conclude that, while waiver may be a relevant circumstance in establishing a prima facie case, it is insufficient standing alone.

## I. BACKGROUND

¶ 2 A jury found Joseph Paleo guilty of aggravated D.U.I. He claims that the state violated the Equal Protection Clause of the Fourteenth Amendment by waiving two of the six peremptory strikes allowed under Rule 18.4(c), Ariz. R.Crim. P.

¶ 3 During jury selection, the state used four of its six allotted peremptory strikes, one on an Hispanic juror. Because the state did not use all of its peremptory strikes, the clerk struck the two jurors at the end of the list pursuant to Rule 18.5(g), Ariz. R.Crim. P.[1] One of those jurors was the sole remaining Hispanic juror. Had the state used one more of its peremptory strikes, the remaining Hispanic juror would have been on the jury.

¶ 4 Paleo challenged the striking of the Hispanic juror and the state's waiver of its peremptory strikes. The trial court heard argument on the struck juror and found no discrimination. Paleo does not contest that ruling. The trial court then heard argument on the issue of the juror who was not selected because she was at the bottom of the list. Paleo argued that the state discriminated by waiving two peremptory strikes so that application of Rule 18.5(g) would result in the removal of that juror from the panel. The prosecutor responded that he had no reason to strike any juror not already struck, thus he waived the remaining peremptory strikes. The trial court denied Paleo's motion. After conviction, Paleo appealed.

¶ 5 Relying on *State v. Scholl*, 154 Ariz. 426, 429, 743 P.2d 406, 409 (App.1987), which held that the *Batson* prima facie case for use of peremptory strikes also applies to the waiver of peremptory strikes, the court of appeals set aside Paleo's conviction and ordered a new trial. *State v. Paleo*, 197 Ariz. 562, 5 P.3d 276 (App.2000). Because this is a case of first impression, we granted review. Rule 31.19(c)(3), Ariz. R.Crim. P.

## II. THE *BATSON* STANDARD

¶ 6 The *Batson* decision makes it clear that racial discrimination is not acceptable in the exercise of peremptory strikes. Discrimination in jury selection not only violates a party's right to "the protection a trial by jury is intended to secure," but also violates the excluded juror's rights by "denying . . . participation in jury service on account of his race." *Batson*, 476 U.S. at 86–87, 106 S.Ct. at 1718–19. To successfully challenge a peremptory strike, a party must set forth a "prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Id.* at 93–94, 106 S.Ct. at 1721. The burden of production then shifts to the opponent who must "explain adequately the racial exclusion." *Id.* at 94, 106 S.Ct. at 1721; *see also Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995) ("The second step of this process does not demand an explanation that is persuasive, or even plausi-

---

1. Following challenges for cause, the parties exercise their peremptory challenges by alternately striking names from the clerk's list. The failure to exercise a challenge operates as a waiver of the party's remaining challenges. "If the parties fail to exercise the full number of challenges allowed them, the clerk shall strike the jurors on the bottom of the list until only the number to serve, plus alternates, remain." Rule 18.5(g), Ariz. R.Crim. P.

ble."). The court then evaluates the facts to determine whether a party engaged in purposeful discrimination. *Batson*, 476 U.S. at 98, 106 S.Ct. at 1724; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000); *Purkett*, 514 U.S. at 767–68, 115 S.Ct. at 1770–71; *State v. Martinez*, 196 Ariz. 451, 456, 999 P.2d 795, 800 (2000). Throughout the process, the burden of persuasion remains on the party alleging discrimination. *Reeves*, 530 U.S. at 143, 120 S.Ct. at 2106; *Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771.

¶ 7 While *Batson* does not state that use of peremptory strikes on minority jurors per se establishes a prima facie case of discrimination, "a defendant *may* establish a prima facie case ... solely on evidence concerning the prosecutor's exercise of peremptory challenges," 476 U.S. at 96, 106 S.Ct. at 1723 (emphasis added), because use of a peremptory strike on a minority juror is sufficient to raise an inference of discriminatory purpose. The trial court at all times is charged with assessing the adequacy of the "requisite showing" based on "all relevant circumstances." *Id.* at 96, 106 S.Ct. at 1723.

## III. WAIVER OF PEREMPTORY STRIKES

### A. Waiver Alone

¶ 8 As the court of appeals and *Scholl* recognized, discrimination resulting from the exercise of peremptory strikes is the subject of *Batson.* But *Scholl* found, and the court of appeals agreed, that "[t]here is no reason to differentiate between use and nonuse of peremptory challenges." 154 Ariz. at 429, 743 P.2d at 409. We disagree. The law does not presume wrongdoing without action of some kind or omission of a legally required act.[2] The waiver of a strike (nonuse) is different from the use of a strike. The latter operates to directly remove a ju-

ror who would otherwise sit; the former does not. Thus, in contrast to the use of a strike, waiver alone is insufficient to create an inference of discriminatory purpose.

¶ 9 The goal of the juror selection process is to seat a fair and impartial jury in a non-discriminatory way. But neither party has a duty to remove jurors to ensure that members of a specific racial or gender group are seated. *See Batson*, 476 U.S. at 85–86, 106 S.Ct. at 1717. To find such a duty would implicate the equal protection rights of the jurors struck in favor of members of a specific group. "A person's race simply 'is unrelated to his fitness as a juror.'" *Id.* at 87, 106 S.Ct. at 1718 (quoting *Thiel v. S. Pac. Co.*, 328 U.S. 217, 227, 66 S.Ct. 984, 989, 90 L.Ed. 1181 (1946) (Frankfurter, J., dissenting)). Our justice system cannot support a racial or gender "ranking" system, which favors seating one group over another depending on the case before the court.[3]

### B. Waiver Plus

¶ 10 While waiver, without more, is insufficient, it could be a relevant circumstance in establishing a prima facie case of discrimination, because those " 'of a mind to discriminate,' " *id.*, at 96, 106 S.Ct. at 1723 (quoting *Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953)), could manipulate the rules to prevent the seating of minority jurors. Waiver, accompanied by something more, could support a prima facie case in various circumstances, for example: (1) when discriminatory statements are made by a waiving party; (2) when a pattern of strikes removing a specific group is shown and waiver results in removal of other members of that group; or (3) where waiver bears on use, *see, e.g., Ford v. Norris*, 67 F.3d 162, 169 (8th Cir.1995)("[F]ailure to apply a stated reason for striking [minority] jurors to similarly situated [non-minority] jurors may evince a pretext for excluding ju-

---

2. *See, e.g.,* A.R.S. § 13–201 ("The minimum requirement for criminal liability is the performance of ... conduct which includes a voluntary act or the omission to perform a duty imposed by law which the person is physically capable of performing."); *Restatement (Second) of Torts* § 314 (1964) ("The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.").

3. This fear was realized in *Scholl.* The trial court ordered the prosecutor to strike a juror in order to seat a minority juror on the panel. *Scholl,* 154 Ariz. at 428, 743 P.2d at 408.

rors solely on the basis of race."). Indeed, in some cases waiver of peremptory strikes will support the alleged discriminator's defense to the prima facie case, where waiver results in the seating of minority jurors. *See, e.g., Bousquet v. State*, 59 Ark.App. 54, 953 S.W.2d 894, 899 (1997) (stating that leaving minority members on the jury by waiving peremptory challenges is "cogent evidence indicating the absence of discriminatory motivation" in striking of other minority jurors).

¶ 11 Under *Batson*, the party alleging discrimination must present a prima facie case and bears the burden of persuasion. Peremptory challenges are a matter of discretion for each party and may be used, or not, for any non-discriminatory reason. Simply stating that a party did not use all of the allotted peremptory strikes does not establish a prima facie case of discrimination, even if minority jurors will not make the final list. Something beyond just waiver is required. Evidence of a discriminatory purpose driving the waiver must be presented to establish a prima facie case.

## IV. DISPOSITION

¶ 12 Paleo failed to present any evidence that the state waived peremptory strikes for a discriminatory purpose. We vacate the opinion of the court of appeals and affirm the judgment of conviction. To the extent *Scholl* is inconsistent with this opinion, we disapprove it.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, STANLEY G. FELDMAN, Justice, RUTH V. McGREGOR, Justice.